## KANSAS CITY, FT. S. & M. R. CO. *v.* STONER.

### (*Circuit Court of Appeals, Eighth Circuit.* July 25, 1892.)

### No. 86.

**1. RAILROAD COMPANIES—NEGLIGENCE—COLLISION OF TRAINS AT CROSSING OF TRACKS.**
In an action against two railroad companies to recover for personal injuries sustained in a collision at a crossing of their tracks, a verdict was rendered against one company and in favor of the other. *Held*, that the former could not complain that the verdict in favor of the latter was contrary to the evidence, for, if itself guilty of negligence contributing to the injury, it was liable for the entire damages.

**2. SAME—EVIDENCE.**
In an action against a railroad company for personal injuries sustained in a collision of its freight train with the passenger train of another company at a crossing of their tracks, it appeared that the freight train was stopped about 150 feet before reaching the stopping post; that the view was there much obstructed by timber: that the engineer got down and walked around his engine to the west, and got up on that side; that before starting he gave two blasts of the whistle, the fireman rang the bell, and he opened the throttle; that he could not see to the east from his position on the west side of the cab, but was keeping a lookout to the west; that as the engine started the fireman looked to the east, and then went to shoveling in coal; that the engineer first saw the other train when it was directly on the crossing, about 100 feet in front of him; and that he reversed the engine, and applied sand to the rails, but was unable to stop. *Held*, that these facts showed negligence, and justified a verdict against defendant.

**3. SAME—APPEAL—HARMLESS ERROR.**
At the trial it appeared that the freight train was not on schedule time, and counsel read to the jury the Arkansas statute, which provides that every railroad company "shall start and run their cars for the transportation of passengers or property at regular times, to be fixed by public notice." Appellant company requested an instruction that this statute had no application to the case, that the running of a freight train "wild" was no evidence of negligence, and that the question of negligence was to be determined solely by what took place at the crossing. This request was refused, but the charge given related only to the alleged negligence at the crossing. *Held*, that while the refusal was technical error, yet the error was harmless, in view of the fact that the evidence conclusively showed negligence at the crossing.

**4. SAME.**
Technical errors in the admission of testimony respecting the speed of the freight train at the time of collision were harmless, in view of the fact that the train was moving at such speed that it could not be stopped within the 100 feet at which the engineer first saw the other train on the crossing.

**5. EVIDENCE—ADMISSIBILITY.**
    In an action for personal injuries, there was read the deposition of a physician, who had examined plaintiff pending the suit. On cross-examination, he testified that his diagnosis of her condition was based on a physical examination, and on statements made by her in reply to questions. He also detailed some of the questions he put to her for the purpose of testing her good faith, and her answers thereto. *Held*, that the admissibility of these questions and answers was not affected by the fact that they were made after the suit was commenced; and as it was apparent that they were merely introduced for the purpose of showing that the physician's opinion as to her condition was partly based on her statements, and not as direct evidence of her past sufferings, the jury could not have been misled thereby.

**6. DEPOSITIONS—SUPPRESSION—TECHNICAL DEFECTS.**
    Depositions will not be suppressed for merely technical defects, in the absence of any showing of injury, when it appears that counsel for both parties were present, and participated in the examination of the witnesses.

In Error to the Circuit Court of the United States for the Western Division of the Eastern District of Arkansas.

Action by Eugenia Stoner against the Kansas City, Ft. Scott & Memphis Railroad Company and the Little Rock & Memphis Railroad Company to recover damages for personal injuries sustained in a collision of trains at a crossing of their tracks. Verdict and judgment against the former company, and in favor of the latter company. The Kansas City Company brings error. Affirmed.

Among the various assignments of error was one alleging that the court erred in denying defendant's motion to suppress certain depositions, which motion was made on the following grounds:

(1) Because there was no caption to the depositions. Neither was there any certificate annexed stating the place where the suit was pending, and because the depositions were not taken before any officer authorized by law to take depositions. (2) The certificate did not state any reason for taking the depositions. (3) It did not state that the witnesses were sworn to tell the truth, the whole truth, or that they were cautioned. (4) It did not state that the depositions were by the officer taking them sealed up and delivered to this court.

The heading to the depositions was simply as follows:

"Eugenia Stoner vs. K. C., F. S. & M. R. R. Co. and L. R. & M. R. R. Co. Depositions G. H. Babcock, Mrs. G. H. Babcock, and Dr. F. S. Raymond, (taken at circuit clerk's office, Nov. 16, 1891.)"

The certificate recites:

"I, John A. Strehl, clerk of the circuit court of said county, do hereby certify that the depositions of the foregoing witnesses, Geo. H. Babcock, Mrs. G. H. Babcock, and Dr. F. S. Raymond, were taken at my office in Memphis, Tenn., before me, in the presence of counsel for plaintiff and defendant; that the questions and answers thereto were taken by a stenographer; that said witnesses have read the depositions in my presence, and have subscribed the same after making corrections, as notes. I further certify that each of the witnesses was duly sworn, and that the depositions have not been altered, or in any manner changed, after they were taken. Given under my hand and seal of court at office in Memphis, this 23d day of November, 1891.          JNO. A. STREHL, Clerk.
                              "By L. E. BOSWELL, D. C."

*Frank Hagerman*, *I. P. Dana*, and *C. H. Trimble*, (*Wallace Pratt*, of counsel,) for plaintiff in error.

*Joseph W. Martin*, (*W. B. Denson*, of counsel,) for defendant in error.

Before CALDWELL and SANBORN, Circuit Judges, and SHIRAS, District Judge.

SHIRAS, District Judge.   The material facts appearing on the record in this cause are as follows:   On the 9th day of July, 1890, the defendant in error, Mrs. Eugenia Stoner, a passenger on the Little Rock & Memphis Railroad, was injured in a collision which took place between the passenger train on that road and a freight train on the Kansas City, Ft. Scott & Memphis Railway at or near Sibley, Ark., where the named lines of railway cross each other at grade.   To recover for the injuries she received, Mrs. Stoner brought this action in the United States circuit court at Little Rock, Ark., against both companies, and on the trial before a jury she recovered a verdict against the Kansas City, Ft. Scott & Memphis Company for the sum of $5,000, the verdict being in favor of the Little Rock & Memphis Company.   To reverse the judgment entered on this verdict the former company brings the case to this court.   It is evident that on the trial before the jury each of the defendant companies sought to throw upon its codefendant the blame for the collision, and in the argument before this court counsel for the plaintiff in error urge that the verdict in favor of the Little Rock Company is contrary to the charge of the court and contrary to the weight of evidence.   Whether the finding of the jury in this particular is or not justified by the evidence is wholly immaterial in determining the issues between Mrs. Stoner and the Kansas City Company, for if the latter company, by negligence on its part, aided in causing the collision, then Mrs. Stoner has the right to recover from that company full compensation for the injuries she suffered, regardless of the fact that the Little Rock Company might also have been in fault.

The first error assigned is that the trial court should have directed the jury to return a verdict for the Kansas City Company, as requested by it, and in support of the proposition it is argued on behalf of the plaintiff in error that there was in fact no evidence showing negligence on the part of that company.   If we leave out of consideration all the testimony save that adduced on behalf of the plaintiff in error, yet this contention of counsel is wholly without foundation, for as we understand the testimony of the engineer and fireman in charge of the Kansas City train, taken in connection with the admitted facts of the case, it appears conclusively therefrom, not only that there was evidence of negligence on part of that company requiring the submission of the issue to the jury, but, further, that no other conclusion than that reached by the jury was possible under the testimony given by these witnesses.   It is not disputed that the printed rule of the defendant company required all trains on its road to be halted before crossing an intersecting line of railway at the stop posts placed in the neighborhood of the crossing; that the stop post at this crossing was located 218 feet from the crossing,

and that, from the heavy growth of timber, trains on the two roads were not readily observable from each other until they had reached the stop posts, that on the Little Rock line being located 250 feet from the crossing. Aside from the provisions of any specific rule upon the sub-ject, the law requires of parties charged with the control and manage-ment of trains moving upon intersecting lines of railway that as they approach a crossing they must exercise due care to secure the safe pas-sage of the train over the same, and in this respect they owe this duty not only to those whose persons or property may be upon the train con-trolled by them, but also to those who may be upon the train of the other intersecting line. In the performance of this duty it is incum-bent upon the parties in control of the train that they shall exercise a proper lookout for the approach of another train, and they must also have their own train under proper control, so that, if need arises, it can be promptly stopped.

The train men know, and are bound to know, that all points where railway lines cross at grade are places of danger, and they must, in the handling of the trains intrusted to them, exercise the care which the presence of this known danger demands of them. Certainly it would be negligence of the grossest kind to attempt to make a crossing without taking pains to see whether there was another train at or near the cross-ing, and without reducing the speed sufficiently to place the train under the reasonable control of the engineer, for, unless these precautions were taken, a collision would be inevitable if another train happened to be upon the crossing, even rightfully, when the other reached it. As aids in securing the exercise of proper care on part of the train men, the com-panies place, at proper points, stopping posts upon their roads, and adopt the rule requiring all trains to be halted thereat. The mere act of stopping the train, however, is not the purpose of the rule. That is merely a means to an end. The ultimate purpose of the rule is twofold, and coincides with the requirements of the general rule of law upon the subject, to wit, to secure opportunity to those in charge of the train to ascertain whether there is another train approaching the crossing, and to place the engineer in complete control of his train. When two trains ap-proach a crossing at the same time, for safety's sake, the rule is adopted that the one which first reaches and stops at the post upon its line is en-titled to precedence in making the crossing. When, therefore, the train on the road of the plaintiff in error came into the neighborhood of the crossing where this accident occurred, those in charge thereof were re-quired to exercise a proper lookout to ascertain whether the crossing could be safely made, or whether there was danger from an approach-ing train, and, further, to so reduce the speed of the train as to place it under the reasonable control of the engineer; and, as an aid in securing these results, it was their duty to halt the train at the stopping post, as required by the rule of the company. What was done in these partic-ulars is shown by the testimony of the engineer and fireman in charge of the train on the defendant company's line, their testimony being sum-marized as follows in the brief of the counsel for the company:

"In the evidence put in by the Kansas City Company it appeared from the evidence of Baker that he was the engineer of the freight train, which consisted of twenty-four loads, three empties, and a caboose; that the train was brought to a stand about 350 feet from the crossing; that he got down and walked around his engine, and got up on the other side, consuming a considerable time in so doing; that before starting he gave two blasts of the whistle, the fireman rang the bell, and he opened the throttle, and started over the crossing; that he could not see, from his position on the west side of the cab, to the east, but that he was keeping a lookout as far as he could see to the west and south; that as the engine started the fireman looked out on the east side, and, after giving the bell a pull, went to putting in coal, at which he was engaged until shortly before the collision. Baker saw the engine of the passenger train for the first time when it appeared on the crossing directly in front of him, about 100 feet away. He reversed his engine as soon as he saw it, and applied sand to the rails, and remained in his place working the sand lever until the engine struck the passenger train, when he went down and was buried under the wreck, receiving very severe scalds and burns. The freight train was running something like a half an hour ahead of schedule time. It was not stopped within 300 feet of the crossing, but it was stopped within 400. He testified that it is a difficult thing to stop a freight train exactly at any particular place. It appeared from the testimony of Peele, the fireman, that Baker had gotten down and walked around the engine; that the whistle was blown twice before starting; that as the train started he had looked out on his side towards the Little Rock track, and saw and heard nothing; that he had then commenced shoveling coal into the fire box, and had been so engaged until he heard Baker's exclamation. He then saw the Little Rock train directly in front of him, and jumped off, striking the ground 75 or 100 feet from the crossing."

From the testimony of these witnesses, introduced on behalf of the company, it appears that the freight train was not halted at the stop post, but at a point some 350 to 400 feet from the crossing, where, owing to trees and other obstructions, it was difficult, if not impossible, to see any distance along the track of the Little Rock road. It is said in argument that it is impossible to stop a heavy freight train at a given point, but when the speed has been checked it is not a difficult matter to move a train slowly forward for a hundred feet or more. But, assuming for the benefit of the company, that there was fair reason for the stoppage of the train at the point where it was halted, yet that fact made it clearly the duty of those in charge of it to exercise the greater watchfulness in again putting the train in motion. They knew the dangers of the surroundings. Knowing that the train had not been halted at the stopping post, but at a point much further away from the crossing, they knew that they could not see up the intersecting track to the same advantage, and the greater caution should have been observed in approaching the point of intersection. What in fact was done? The engineer testifies that from his position in the cab he could not see on the east side of his engine; that as the engine started the fireman looked out on the east side, gave the bell a pull, and then began putting coal into the fire box, and the fireman testifies to the same effect. In other words, notwithstanding the known situation demanded great watchfulness in approaching the crossing, practically none whatever was exercised for trains coming from the east on the track of the Little Rock

road. The testimony of the engineer shows that he himself could not exercise a lookout upon the east side, and he knew that the fireman was not engaged in that duty, but was down on the floor of the cab engaged in shoveling coal, and yet, with this knowledge, he drove the train right by the stopping post, and down upon the crossing, at an increasing rate of speed, and right upon the passenger train then coming from the east. Both these witnesses testify that the presence of the passenger train was not discovered until the engine thereof was going over the crossing, and had come within the line of vision of the engineer of the freight train. This fact demonstrates that no outlook whatever was exercised by those in charge of the freight train for trains coming from the east, and clearly establishes negligence in this particular.

Furthermore, from the testimony of the engineer, it appears that the freight train was moving at such a rate of speed that when he discovered the other train at a distance of about 100 feet he could not prevent the collision, although every means available were used. In other words, although the engineer knew that he had not halted his train at the point designated by the rules of his company, but at a place much further away from the crossing, and where the opportunities for seeing trains on the intersecting line were greatly lessened, and although he knew that he could not see the line to the east, and that the fireman was not looking out for danger on that side, he nevertheless gave such speed to his train that when it was found that the crossing was occupied by another train, which, according to the rule in such cases, would have precedence in the matter of crossing, he could not stop the movement of his train, and could not possibly prevent a serious collision, with all its attendant horrors. Certainly such a state of facts would not only justify, but would demand, a finding of negligence in this particular, as well as in that touching the failure to exercise a proper lookout when approaching the crossing. Clearly, therefore, there is no merit in the position that the court erred in not directing a verdict for the plaintiff in error on the ground that the evidence wholly failed to show negligence on the part of the company.

We should not have deemed it necessary to consider the evidence at any length on this point were it not that such consideration was useful in connection with the next error assigned, which is based upon the following facts: It was averred in the petition filed in the cause that the train upon the Kansas City road was behind schedule time when it reached the crossing, and there was evidence introduced tending to show that the train was not upon schedule time, but was running as a wild train; that is, upon special telegraphic orders from the train dispatcher. During the argument of the cause before the jury one of the attorneys for the Little Rock Company stated to the jury that the statutes of Arkansas made it the duty of all railroad companies to run their trains at regular times, to be fixed by public notice, and read from a paper the following words: "Every such corporation shall start and run their cars for the transportation of passengers or property at regular times, to be fixed by public notice," which language, counsel stated, was copied from

an act of the legislature of the state. Counsel for plaintiff in error requested the trial court to instruct the jury that the section of the Arkansas statute from which these words were copied had no application to the case; that the running of the freight train as a wild train was no evidence of negligence; and that the question of negligence was to be determined solely upon what took place at the time of the crossing. These instructions were not given, and error is assigned thereon. It may be said, in passing, that the plaintiff in error does not except to the charge given by the court to the jury. The court did not instruct the jury that they could give any weight to the fact that the freight train was not running on schedule or regular time, but, on the contrary, confined the charge to the question of due care at the time the crossing was actually attempted.

We entirely agree with counsel for plaintiff in error, that the section quoted from the statutes of Arkansas has no application to the issues in this case, and should not have been called to the attention of the jury; and, furthermore, we think that it would have been well for the court, in view of the fact that this section had been quoted from by counsel in argument, to have given the specific instructions requested in writing by counsel for the Kansas City Company. In fact, we think, under the circumstances, that it was, strictly speaking, error to refuse to give these instructions, although it is possible the trial court deemed it unnecessary, in view of the language used in the general charge given the jury. We are, however, also of the opinion that this error does not require a reversal of the case, because it sufficiently appears that no possible prejudice has been thereby occasioned to the plaintiff in error. If the evidence had left the question of the negligence of the Kansas City Company in doubt, so that the jury were called upon to weigh conflicting testimony or to put conflicting theories in the balance, then it might be well contended that the jury might have given weight to the suggestion that the Kansas City train was in fault in running as a wild train in contravention of the assumed provisions of the state statute; but, in view of the undisputed facts of the case, it is entirely clear that no prejudice could have resulted to the plaintiff in error growing out of the failure to give the instructions requested by it.

As we have already stated, the evidence introduced by the plaintiff in error admits of but one conclusion upon this question, and there is no possibility that upon another trial any other verdict could be hoped for upon this issue. It has been settled by the supreme court in the case of *Iron Silver Min. Co.* v. *Mike & Starr Gold & Silver Min. Co.*, 143 U. S. 394, 12 Sup. Ct. Rep. 543, that a technical error in the instructions given by the court, but which obviously wrought no injury to the substantial rights at issue, is not ground for a reversal of the judgment; and this principle has been enunciated in various forms by the supreme court. Thus in *Smiths* v. *Shoemaker*, 17 Wall. 630, it is said:

"We repeat the doctrine of this court laid down in *Deery* v. *Cray*, 5 Wall. 795, that while it is a sound principle that no judgment should be reversed on error, when the error complained of worked no injury to the party against

whom the ruling was made, it must appear so clear as to be beyond doubt that the error did not and could not have prejudiced the rights of the party. The case must be such that this court is not called on to decide upon the preponderance of the evidence that the verdict was right, notwithstanding the error complained of."

As we understand the facts of the case at bar, the negligence of the plaintiff in error is proven, not by a preponderance of the evidence, but without any disagreement in the testimony in regard thereto, all the evidence pointing to the one conclusion, and therefore it is made clear that the error complained of did not and could not have worked any injury in fact to the plaintiff in error, and therefore, under the settled rule of the supreme court, we are required to hold that the refusal of the trial court to give the request preferred by the Kansas City Company was not an error justifying the reversal of the judgment rendered in this cause.

This same principle is applicable to several assignments of error based upon answers made by witnesses touching the rate of speed at which, in their opinion, the freight train was moving at the time of the accident. If any of the answers given were technically improper, they are not ground for reversal, for the general fact in this particular is proven by the testimony of the witnesses introduced by the defendant, to wit, that the freight train was moving at such a rate of speed that it could not be stopped in time to prevent a collision when the presence of the passenger train was discovered by the engineer.

Error is also assigned upon the ruling of the trial court upon a motion to suppress certain depositions of witnesses taken on behalf of the defendant in error. In times past the statutes providing for taking of testimony by deposition were construed with great strictness, and any deviation from the provisions thereof was held fatal to the deposition, and this was especially the rule under the former provisions of the statute of the United States, which provided that under certain circumstances depositions might be taken without notice to the adversary party. Since the amendment of this statute requiring notice to be given, and, under the more enlightened views obtaining at the present time in regard to the effect of purely formal defects in matters of procedure and practice, merely informal deviations from the statutory provisions regulating the taking of testimony are not held fatal thereto. If it appears that the right to take the testimony in this form exists, and that due notice of the taking thereof has been given to the opposing party in the case, so that the right of cross-examination has been properly secured, then the objection to the reading of depositions so taken should be substantial, and not technical, before it should be sustained. The depositions objected to were taken at Memphis, Tenn., counsel for both parties being present and participating in the examination and cross-examination of the witnesses. Under these circumstances, and in the absence of any showing of prejudice or injury, we are not justified in holding that the trial court erred in admitting the despositions, for any of the reasons urged in support of the error assigned on the action of the court in this particular.

It is also assigned as error that the court did not instruct the jury, as requested by the plaintiff in error, that they were not to consider the statements concerning her sufferings made by Mrs. Stoner since the commencement of this suit. On the trial of the case the plaintiff below read the deposition of Dr. Wilkinson, who had examined Mrs. Stoner after the suit was brought for the purpose of ascertaining the extent of her injuries. Upon cross-examination he testified that his diagnosis of her condition was based upon a minute examination made by him, and also upon the statements made to him by Mrs. Stoner in reply to questions put by him. The witness detailed some questions which he put to Mrs. Stoner for the purpose of satisfying himself of her good faith in the premises, with the answers she made thereto. It is objected that these statements of Mrs. Stoner were hearsay and self-serving declarations, which should not have been admitted, and that the jury should have been instructed to wholly disregard all statements of her sufferings made after the beginning of this action for damages.

The admissibility of statements made indicating pain and suffering is not dependent upon the time the same were made with reference to the bringing of an action for damages, but upon the circumstances under which they were made. If the statements were indications of present pain and suffering of such a character that, if made before suit was brought, they would be admissible, then the mere fact that the suit was pending would not render them inadmissible. We agree with counsel for plaintiff in error that statements of past suffering, and which are in effect a recital of past events, would be purely hearsay, and therefore inadmissible, but this would be true of statements made before, as well as of those made after, suit brought. It was not error, therefore, to refuse the instruction in the form in which it was asked, because it declared that all statements made after the suit was brought were inadmissible, which is not the true test of admissibility. Neither do we find reversible error in the mere fact that on cross-examination Dr. Wilkinson testified to certain statements and actions on part of Mrs. Stoner, made at the time he examined her, for the purpose of ascertaining the condition of her health. If the witness had been called by the plaintiff below for the purpose of testifying to statements made to him by Mrs. Stoner, it would then have appeared that the purpose was to put before the jury the statements thus made as direct evidence, and in such case the objection thereto would have been well taken. In fact, however, the testimony was called out upon cross-examination, and was directed to the point of showing that the opinion given by the witness as to Mrs. Stoner's condition was partly based upon her statements and actions at the time of the examination. In reply to the questions put for the purpose of showing this fact, the witness gave in some detail the precautions he took in order to avoid being misled in his examination, including therein the answers given by Mrs. Stoner to queries he put to her. In fact, the testimony objected to was introduced in order to enable the jury to determine the weight to be given to the evidence of Dr. Wilkinson, by bringing before them the character of the examination

v.51 f.no.10—42

made by him, and the care exercised by him in conducting the·same, and we do not believe the jury were misled thereby. Finding no prejudicial or substantial error in the record submitted to this court, it follows that the judgment of the court below is affirmed.