## Kuch v. Temple Coal Company.

*Workmen's compensation—Cause of death—Injury as proximate cause—Evidence admissible as part of res gestæ—Expert testimony—Revisory powers of court.*

1. Where the Workmen's Compensation Board finds that the injuries sustained by decedent were the proximate cause of his death, even though there was evidence of a pre-existing condition which made him peculiarly susceptible to a blow of the character described, the finding of the board will not be disturbed.

2. A physician may testify in case of injury what his patient said in describing his bodily condition, if said under circumstances which free it from all suspicion of being spoken with reference to future litigation and not as the result of premeditation or design or inspired by conversations with other parties, and such evidence is admissible as part of the *res gestæ*.

3. It was not intended by the legislature that the court should be an appellate administrative tribunal to weigh the evidence submitted to the referee or the board. Its revisory powers are limited to such consideration of the record as will enable it to ascertain whether there is evidence to support the findings of the board, and if, upon such findings, the law has been properly applied. Though the court may be of the opinion from the apparent weight of the evidence that a finding should be made adverse to that of the board, it is not at liberty to enter or direct such different finding where the one adopted by the board is supported by proof. The legislature has confided to the board and referee the exclusive function of determining what facts are established.

Appeal from decision of Workmen's Compensation Board. C. P. Lackawanna Co., Oct. T., 1924, No. 635.

*J. E. Brennan* and *P. M. Dzwonchyk,* for plaintiff.

*J. R. Wilson,* for defendant.

MAXEY, J., Dec. 30, 1924.—The Temple Coal Company, appellant in the above stated case, appeals from the decision of the Workmen's Compensation Board, alleging as grounds for said appeal the following:

"1. The findings of fact found by the referee and affirmed by the Compensation Board were not warranted by the evidence.

"2. The referee erred in his third finding of fact, which finding of fact is as follows: 'That on the 2nd day of March, 1923, while the claimant's decedent was returning from his employment on a conveyance furnished by his employer, which had been customarily used by the deceased employee to return from his work, he was accidentally injured.'

"3. The referee erred in his fourth finding of fact, which finding of fact is as follows: 'The mine-car in which the employee was riding at the time of the injury came to a stop and the deceased employee was overbalanced and thrown against the end of the car.'

"4. The referee erred in his fifth finding of fact, which finding of fact is as follows: 'Upon his arrival home, a short distance from the place of the accident, he was in excruciating pain, was hardly able to talk and continued in pain and to exhibit acute symptoms of abdominal trouble from that time until he died the following day.'

"5. The referee erred in his seventh finding of fact, which finding of fact is as follows: 'A blow, such as sustained by the claimant's decedent to any part of the abdomen, assuming a pre-existing condition, such as undoubtedly this decedent had, would most likely precipitate the perforation, and the referee so finds.'

"6. The referee erred in his eighth finding of fact, which finding of fact is as follows: 'The accident aggravated the pre-existing disease, became acute, and caused immediate death within a matter of hours from the time of the injury.'

"7. The referee erred in his second conclusion of law, which conclusion is as follows: 'That the injury sustained by the claimant's decedent is an accident to the physical structure of his body within the contemplation of the Workmen's Compensation Act and occurred in the course of his employment, and his dependent children are entitled to compensation, payable to their guardian, as provided in article III, section 306, of the Workmen's Compensation Act.'"

## Discussion.

The position of the appellant is that the injury upon which plaintiff's claim was founded was of so negligible a character that it is insufficient to sustain the finding of the referee and Compensation Board in this case, and that the evidence is also insufficient to sustain the finding that the decedent died from the effects of the alleged injuries. There is no dispute that the claimant's decedent had finished his work for the day at the Northwest Colliery of the defendant company and that he was riding to his home on a trip of cars hauled by a locomotive of the defendant company. The locomotive was pushing these cars. The engineer brought the locomotive to a stop and the defendant lost his balance and fell.

Michael Taharnick testified that there were ten or twelve men in the mine-car in question, that the car jerked, that the decedent's dinner-pail fell out of his hand and he tried to catch it, and that he "fell through the car." When asked, "Did any part of his body hit the car?" he answered, "Oh, bumping; you know." Question: "When the bump took place, what part of his body hit the car, in the front or the side or the back?" The witness indicated that the decedent fell sideways. When asked "against what did he fall?" he answered, "I don't know; he bumping something." He testified that when the decedent fell he said nothing but looked around for his dinner-pail. He further described the cause of the fall as: "He (the engineer) wants to stop and then start like and those cars go like that and he (the decedent) fall down." On cross-examination, he said he asked the decedent if he was hurt, and the decedent answered: "He is bad hurt." He described the jerk of the engine as a "little jerk." He also testified in substance that it was customary for the men to ride on these cars to and from the mine.

Mary Kuch, daughter of the decedent, testified that she saw her father come home from the mine on the day in question, that as he came up the hill "he was holding his hand right here and holding the dinner-pail in his hand, and he was pretty near by the house and he was by the window there, and then coming up the steps, coming on his hands and feet like that;" that when he came in he started crying, "Oh, Oh!" and the witness said, "What is the matter?" and the decedent answered, "It hurts in here," indicating the region of his stomach; that her father said "he was getting off the car and the car was going and the car stopped . . . and it bumped back and he bumped himself against the door of the car." She testified that her father was taken to the hospital.

Dr. J. R. Kielar was called on the part of the claimant and testified that he saw the decedent, John Kuch, on the day of the alleged injury and that he was lying on the floor groaning. He testified: "I asked him what happened and he told me he was coming home from work and when he was getting off the cars that brought him down from the breaker the engine jerked and he was knocked against the side of the car and struck his abdomen against the car, . . . and he said he got a bad pain in the stomach but didn't think it was so bad and managed to get up out of the car and walk down the street, but just as he got towards home he could hardly stand on his feet and had to crawl in

the house and fell on the floor. When I got there he was lying on the floor, feet drawn up and groaning with pain." The witness testified that he examined the abdomen and found it rigid and that the injured man complained of pain all over the abdomen, but more severe just above the umbilicus, that "his abdomen was very rigid, hard like—you could almost stand on it." Kuch died the next day. After his death a *post-mortem* examination was made with the following doctors present: Kielar, Arndt, Niles, Johnson, Costello. All agreed that death was due to peritonitis, but they did not agree as to the cause of the peritonitis. Dr. Kielar made out the certificate of death, and gave as the cause: "Perforated lower small intestine—generalized peritonitis."

Dr. Costello, called by the defendant, testified that the abdomen had no mark whatsoever of any external injury or violence, that "the appearance of the man was somewhat emaciated; . . . the man was not in what you call really good physical condition." Dr. Costello testified that the perforation of the intestine was undoubtedly caused by an ulcer, and that "the perforation could not have occurred without some evidence of external injury . . . if the bowel was in good condition before this supposed injury happened." He also said that a perforation could take place without any violence at all.

The evidence of the three doctors, called as witnesses for the defendant, was at variance with that of Dr. Kielar.

It is contended in this case that the claimant has not produced clear, positive and convincing proof that death took place as the result of an injury in the course of employment or while upon the employer's premises or while engaged in furthering the interests of the employer.

The testimony of Dr. Kielar that when he first attended the decedent the latter told him that he had been knocked against the side of the car and had struck his abdomen against the car and he "got a pain in his stomach" was competent evidence.

A statement made by a patient to his physician that an injury was caused by the bite or sting of an insect was held admissible in Omberg v. U. S. Mutual Ass'n (Kentucky), 40 S. W. Repr. 909. See, also, Globe Accident Ins. Co. v. Gerisch, 61 Ill, App. 140, and Newman v. Dodson, 61 Tex. 91.

A physician testifying as an expert may give such statements of the injured person as are necessary to an understanding of the reasons for his conclusions: Kansas City, Ft. S. & M. R. R. Co. v. Stoner, 2 C. C. A. 437; s. c., 51 Fed. Repr. 649.

3 Wigmore on Evidence (2nd ed.), § 1720: "A physician testifying as to a patient's health may be asked, like any other witness, for the reasons for his conclusions, . . . and . . . the fact that it is in part or entirely founded on the statements of the patient or of others may thus be brought out. Here, of course, the patient's statement has no hearsay quality; without regard to its correctness or incorrectness, it enters merely as an observed fact forming part of the physician's data."

Illinois C. R. Co. v. Sutton, 42 Ill. 440: A physician "may state what his patient said, in describing his bodily condition, if said under circumstances which free it from all suspicion of being spoken with reference to future litigation and give it the character of *res gestæ*."

Smith v. Stoner, 243 Pa. 57, 62: "The jurors in finding their verdict had to depend upon the circumstances surrounding the accident and certain statements made by the injured man. . . . The witnesses to Smith's declarations were the first persons who spoke to him after the accident, and when they reached his side, he told them what had happened. One of them stated that

the injured man said he was 'running along side of his trip' and 'tripped and caught hold of the post and tried to save himself, but the trip carried him on through' and he was 'caught between the rib and the cars' and 'twisted down through there,' and the other witnesses gave testimony to the same effect. These statements were admissible under our cases, since there was no marked break in the continuity of events to turn them into a mere narrative of the past. Here the declarations were made to the first persons who appeared upon the scene and within a half an hour after the accident, while Smith, who had been suffering intense pain from the time he was injured, was lying upon the spot where he was hurt; so it was but reasonable to conclude that he had no opportunity to deliberate and design."

In Riley v. Carnegie Steel Co., 276 Pa. 82, the declarations which were held inadmissible were made over ten hours after the accident, and, as the Supreme Court says: "While, in the meantime, he (the decedent) had worked many hours, talked with many people, including his wife, ate his supper and gone to the doctor's office. . . . To be admissible as part of the res gestæ, declarations must be the spontaneous utterances accompanying or immediately succeeding or immediately preceding the act in question, so near in point of time and place as to be in reality a part of it and not the designed statements of the actors nor the recital of a past event."

We think the declarations that Kuch made to his physician in this case were made so soon after the accident that they were admissible as part of the res gestæ and that they were not the result of premeditation or design or inspired by conversations with other parties.

Even though the decedent had been suffering from ulcers of the stomach, if the blow or jar which he undoubtedly received on his trip home from the mine of defendant precipitated the condition that caused his death, this blow would, in the eyes of the law, be the proximate cause of his death and the award of the referee should not, therefore, be disturbed, even though there was evidence of a pre-existing condition there which made the decedent peculiarly susceptible to a blow of the character described.

It is true that there is conflicting medical testimony in this case, but we would not be justified in reversing the decision of the board because of that fact or because we might find that the board could have reached a different conclusion than it did.

In Kuca v. Lehigh Valley Coal Co., 268 Pa. 163, 165, the Supreme Court said: "It was not intended by the legislature that this court should be an appellate administrative tribunal to weigh the evidence submitted to the referee or the board. Our revisory powers are limited to such consideration of the record as will enable us to ascertain whether there is evidence to support the findings of the board, and if, upon such findings, the law has been properly applied. Though we may be of opinion, from the apparent weight of the evidence, that a finding should be made adverse to that of the board, we are not at liberty to enter or direct such different finding where the one adopted by the board is supported by proof. The legislature has confided to the Compensation Board and referees the exclusive function of determining what facts are established."

In Stahl v. Watson Coal Co., 268 Pa. 452, 454, the Supreme Court said: "If the vital point in dispute is claimed to have been established by direct proof, the question whether or not there is evidence to sustain it is one of law and may be reviewed; but, if such evidence appears, the finding becomes one of fact and is not the subject of review, though the referee and board might well have decided the point differently and the court would possibly have done so."

Furthermore, there was strong circumstantial evidence in the case to support the finding that the decedent died as the result of this injury. The fact that he was undoubtedly injured, even though the injury at the time appeared to be slight, the fact that Dr. Kielar found the abdomen in the condition that he described immediately after the accident, the fact that the injured man was evidently suffering pain in the abdomen, and the fact that after his death the intestines were found in the condition described, would all support the conclusion that the proximate cause of the death of the decedent was the injury that he received while on his way home from work and while on the premises of his employer. Possibly the intestines were in such a fragile condition that only a slight blow would cause the perforation described, but no matter how slight the blow may have been, if it was the proximate cause of the death of the decedent, the award of the referee and the board must be sustained. The relationship between the injury decedent received and his death may have been coincidental, as appellant claims, but there is certainly evidence to suport the conclusion that the relationship was that of cause and effect. If this had been a jury trial and the only issue the cause of decedent's death, the question would have to be, under the evidence in this case, submitted to the jury, and a verdict of the jury finding that his death was caused by the injury received would not be set aside.

In the case of Lestrange v. Maccar Truck Co., 23 Lacka. Jurist, 304, the deceased had died of pulmonary tuberculosis, which it was claimed was the resultant effect of certain injuries suffered by him about a year before. In that case the Compensation Board found that "the injuries suffered by the claimant as a result of the accident 'were violence to the physical structure of his body' and the resultant effects thereof were pain and suffering, which resultant effects so lowered his vital resistance that a tubercular condition, which was either in his lungs at the time of the accident or developed thereafter, quickly developed, due to the lowered resistance, causing his death on Oct. 27, 1920, of pulmonary tuberculosis, his death being hastened due to the resultant effects of the violence suffered." This finding was sustained.

In Clark v. Lehigh Valley Coal Co., 264 Pa. 529, 533, Moschzisker, J., said: "If death comes during the course of employment in an ordinary way natural to the progress of a disease with which one is afflicted and with which he was smitten before the accident, there can be no recovery; . . . but if the demise is brought about by an injury due to some mishap or accident happening during the course of his employment, the fact that deceased had a chronic ailment which rendered him more susceptible to such injury than an ordinary person would be will not defeat the right to compensation."

In the case before us there was a conflict of testimony as to the actual cause of death. There was certainly competent and sufficient evidence to sustain the conclusion that the decedent's death was caused by a rupture of the intestines, due to an injury to the physical structure of the body, and that this accident was sustained while the decedent was returning from his employment in a conveyance furnished by his employer, which had been customarily used by the decedent employee to return from his work.

Now, to wit, Dec. 30, 1924, the exceptions and the appeal are dismissed; the award of the Workmen's Compensation Board is affirmed, and judgment is entered for the claimant and against the defendant for the sum of $5424.71, in accordance with the terms of the award of the referee and the Workmen's Compensation Board.

From William A. Wilcox, Scranton, Pa.